IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| National Rifle Association of America, | ) | Case No. 2:23-mc-00444-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Alicia Warner Loughlin, | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Ackerman McQueen, Inc.; Mercury Group Inc.; Anthony Makris; | ) | |
| | ) | |
| Defendants. | ) | |

This civil action arises out of a subpoena served upon Movant Alica Warner Loughlin ("Mrs. Loughlin") in connection to a case pending in the United States District Court for the Northern District of Texas, Dallas Division, Case No. 3:22-cv-1944-G (the "Texas case"). The Texas case is between Plaintiff National Rifle Association of America ("Plaintiff" or "NRA") and Defendants Ackerman McQueen, Inc; ("Ackerman") Mercury Group Inc. ("Mercury"); and Anthony Makris ("Makris"). Mrs. Loughlin, a non-party, is married to Makris. The subpoena requires that Mrs. Loughlin be deposed on June 15, 2023, and produce certain documents. (Dkt. No. 1-1.) Mrs. Loughlin resides within the District of South Carolina, and the deposition is to occur within this district. (*Id*.) Mrs. Loughlin therefore moved to quash the subpoena in the District of South Carolina. Specifically, she filed a Motion to Quash on June 23, 2023, which initiated this action. (Dkt. No. 1.) On August 7, 2023, Plaintiff filed a Motion to Seal. (Dkt. No. 11.) Plaintiff then filed a Motion to Transfer on August 14, 2023. (Dkt. No. 11.) These Motions have been referred to the undersigned by the Honorable Bruce Howe Hendricks (Dkt. Nos. 2; 17; 22.)

1

For the reasons set forth below, the Motion to Seal is DENIED, the Motion to Transfer is GRANTED, and the Motion to Quash is hereby TRANSFERRED to the Northern District of Texas, Dallas Division, to be included in Case No. 3:22-cv-1944-G.

## **BACKGROUND**

On May 26, 2023, Movant Alicia Warner Loughlin was served a subpoena asking her to appear for a deposition in Mt. Pleasant, SC on June 15, 2023 and to provide the following information:

> 1. All Documents relating to work You performed for Under Wild Skies, including but not limited to Documents relating to any work You did for Under Wild Skies as an independent contractor.
> 2. All Documents relating to any and all compensation paid to You by Under Wild Skies.
> 3. All Your personal tax returns for the years 2009-2018.
> 4. All business tax returns for Warner Loughlin Studios, Inc. for the years 2009-2018.
> 5. All Documents relating to work You performed for the NRA and any of its officers or directors.

(Dkt. No. 1-1 at 1–15.) On June 23, 2023, Mrs. Loughlin filed a Motion to Quash in this Court, which initiated this action. (Dkt. No. 1.) Thereafter, Mrs. Loughlin "provided the NRA with all documents responsive to items 1, 2, and 5." (Dkt. No. 25 at 1.) She continues to dispute the production of her tax returns, however. (Dkt. No. 25.) She asserts that the tax returns sought in items 3 and 4 present an undue burden given their lack of relevance to the Texas lawsuit and her role as a third-party. (Dkt. No. 1 at 5–6.)

As noted, the instant subpoena was served upon Mrs. Loughlin in connection to the Texas case, which was filed by the NRA against Ackerman and Mercury on September 1, 2022. The initial complaint, which has since been amended,[1] characterizes the action as a breach of contract to enforce a Confidential Settlement Agreement ("CSA") executed in a prior case. (Texas case,

---

[1] While the amended complaints in the Texas case are sealed, the initial complaint is not sealed.

Dkt. No. 2 at 1–2.) Specifically, in 2019, the NRA proceeded against Defendants Ackerman and Mercury in a separate action brought in the Northern District of Texas—Makris was not a named party in that dispute. *See* Case No. 3:19-cv-02074-G ("2019 Texas case"). On March 21, 2022, the parties in the 2019 Texas case executed a CSA, which ended the case. (Texas case, Dkt. No. 2 at 17.) The NRA asserts that the CSA ended the 2019 Texas case as well as "all disputes among a very broadly defined group of individuals and entities," including Makris and Mrs. Loughlin. (Dkt. No. 11-1 at 7.)

According to the NRA, it filed a "Second Amended Complaint" in the Texas case "on February 14, 2023, adding Makris as a Defendant." (Dkt. No. 11-1 at 9.) While the initial complaint is public, the amended complaints in the Texas case are currently under seal, including the Second Amended Complaint. (Texas case, Dkt. Nos. 15; 37.) In its Motion to Transfer, the NRA states that the Texas case "include[s] claims that . . . Makris . . . engaged in a decade-long scheme to extract millions of dollars from the NRA by the submission of 'Supplemental Invoices' on the letterhead of his alter ego, Under the Wild Skies." (Dkt. No. 11-1 at 5.) However, the Court cannot access the Second Amendment Complaint, which sets forth this claim against Makris and the supporting allegations.

Relevant here, Makris was a principal of Under the Wild Skies ("UW"), an entity that produced/owned a television show for the NRA. (Dkt. No. 1 at 2.) UWS was a reality series in which individuals were filmed while on safari hunting big game. At some point, Mrs. Loughlin was added as a principal of UWS. Mrs. Loughlin claims she had no real day to day dealings with UWS. (*Id*. at 3.) "On a few occasions, Mrs. Loughlin provided services to individuals who appeared on UWS through her own entity, Warner Loughlin Studios. For those services she was paid through UWS." (*Id*.)

3

The NRA asserts that the tax returns sought in the subpoena at issue "will show how Loughlin accounted for the payments she received from the NRA and payments she received through [UWS]" and "will also demonstrate whether UWS was, in fact, Makris' alter ego." (*Id*. at 5–6.) Mrs. Loughlin disputes the relevance of her tax returns to the claims in the Texas case and argues that "there are much better ways to seek information related to alleged fraudulent invoices submitted by Makris to the NRA than Loughlin's tax returns." (Dkt. No. 25 at 7.)

## DISCUSSION

A.   **Motion to Transfer (Dkt. No. 11)**

Before the Court can address Mrs. Loughlin's Motion to Quash, the undersigned must first consider whether a ruling on that motion should be issued in this district. Specifically, by the Motion to Transfer, the NRA requests that the Court transfer the Motion to Quash to the United States District Court for the Northern District of Texas, Dallas Division, pursuant to Rule 45 of the Federal Rules of Civil Procedure. (Dkt. No. 11.)

The subpoena at issue directed that the deposition occur within this district and the documents also be produced in this district. *See* Fed. R. Civ. P. 45(c)(2)(A). Rule 45(d)(3)(A) states, in part, that "the court for the district where compliance is required" must quash or modify a subpoena that is improper for certain reasons. Fed. R. Civ. P. 45. The NRA` does not contend that the Motion to Quash has been filed in an improper venue, but rather requests that the Motion to Quash be transferred pursuant to Rule 45(f), which provides in part: "Transferring a Subpoena-Related Motion. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

4

Because Mrs. Loughlin objects to the transfer, the Motion to Quash may be transferred to the Northern District of Texas only if there are "exceptional circumstances." "In evaluating whether 'exceptional circumstances' are present, the court considers a number of factors related to the underlying action. These factors include the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by the issuing court in the underlying action." *Philips North America LLC v. Little*, No. 3:22-mc-0096-MOC-DSC, 2022 WL 2517193, at *1 (W.D.N.C. July 5, 2022) (collecting cases); *see also* Advisory Committee Notes, 2013 Amendment ("In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts.").

Here, the record shows that the claims in the underlying Texas case stem from the alleged breach of a settlement agreement reached in separate litigation in 2019. The District Judge assigned to the Texas case also presided over the 2019 Texas case. Thus, transfer would enable the court most familiar with the case to decide the relevancy issues presented in Mrs. Loughlin's Motion to Quash.

Further, the NRA has served multiple subpoenas on third parties in connection to the Texas case, identifying compliance in other districts. (Dkt. No. 11-2 at 2–3.) Defendants first sought to quash these subpoenas in the underlying Texas case. (Dkt. No. 11-2.) Relevant here, on July 14,

5

2023, the Texas court dismissed without prejudice the motion to quash those subpoenas, stating it "lacks jurisdiction to rule on any request to quash those subpoenas under Rule 45." (*Id*. at 2–3.) Thereafter, motions to quash were filed with respect to three of these non-party subpoenas in the United States District Court for the Eastern District of Virginia (the "Virginia court"). (Dkt. Nos. 21; 21-1.) The Virginia court found exceptional circumstances under Rule 45(f) warranted the transfer of two of those motions to the Northern District of Texas, to be included in the underlying Texas case.[2] (Dkt. No. 21.) It appears these motions to quash are now before the court in the Texas case.

Notably, "[e]xceptional circumstances have . . . been found when the issuing court is already coordinating discovery for the underlying action and has issued subpoenas to parties in various districts that will likely inspire third parties to raise the same issues." *In re Bayer Cropscience*, No. 5:16-mc-10-RJ, 2016 WL 7429201, at *3 (E.D.N.C. June 14, 2016) (citing *Chem Aqua, Inc. v. Nalco Co.*, 2014 WL 2645999, at *3 (N.D. Tex. June 13, 2014) ("Further, where the issuing court has already considered similar issues as to one other similar third-party subpoena, transfer to the issuing court is appropriate where the same or substantially similar issues may arise in discovery disputes in many districts in which compliance with Nalco's subpoenas to other third parties is required.")). Based on the discovery motions currently pending in the Texas case, the NRA argues that "allowing the Motion [to Quash] to proceed in this Court risks inconsistent discovery rulings." (Dkt. No. 11-1 at 20.) The undersigned agrees.

Upon careful review, the undersigned finds that transfer to the Northern District of Texas will foster judicial economy, eliminate the risk of inconsistent decisions, and avoid disrupting the

---

[2] Here, the Court recognizes that the Virginia court granted the motion to quash a subpoena served upon a non-party accounting firm that previously served UWS. The Virginia court's written order did not explain its reasons for granting the motion and denying a transfer, however. Further, the subpoena underlying that motion was much broader in scope than the one at issue here. *See* Case No. 1:23-mc-00016-MSN-JFA, Dkt. No. 1; Dkt. No. 1-1.

Texas court's management of the underlying case. Because the District Judge assigned to the Texas case also presided over the 2019 Texas case, transfer will enable the court most familiar with the case to decide relevancy questions that require a detailed understanding of the underlying action. Further, the Second Amended Complaint, which contains the allegations arguably supporting the relevance of Mrs. Loughlin's tax returns, is under seal. Accordingly, it is difficult for this Court to fully analyze the issue of relevance.

In sum, the Court finds that there are "exceptional circumstances" warranting the transfer under Rule 45(f). In particular, judicial economy, efficient case management, and the administration of justice are likely best served by transfer to the Northern District of Texas. *See Grupo Petrotemex, S.A. de C.V. v. Polymetrix AG*, No. 3:19-mc-185-FDW-DCK, 2019 WL 7000080, at *2 (W.D.N.C. Dec. 20, 2019) (granting motion to transfer under Rule 45(f) because "judicial economy, efficient case management, and the administration of justice are likely best served by transfer to Minnesota."); *D.R. Horton, Inc. v. NVR, Inc.*, No. 3:16-mc-053-RJC-DCK, 2016 WL 2942352, at *2 (W.D.N.C. May 20, 2016) (holding that the motion to transfer was appropriate because it likely furthered "judicial economy, efficient case management, and the administration of justice"); *In re Niaspan Antitrust Litig.*, No. JKB-15-1208, 2015 WL 3407543, at *1 (D. Md. May 26, 2015) (granting motion to transfer under Rule 45(f) because, *inter alia*, the issuing "court has already issued subpoenas to entities in various other states. . . , and the issues raised in Lupin's motion to quash are likely to arise in these other districts."). For these reasons, the Motion to Transfer is granted, and the Motion to Quash is hereby transferred to the Northern District of Texas, Dallas Division, to be included in Case No. 3:22-cv-1944-G.

B.   **Motion to Seal (Dkt. No. 9)**

Having found transfer appropriate, the Court must now consider what filings, if any, should remain sealed in this action. The NRA seeks to seal "[t]he subpoena at issue in this litigation, and the briefing in connection with Movant's Motion to Quash." (Dkt. No. 9 at 2.) In an effort to hasten the briefing on the Motion to Quash, the Court issued a Text Order on August 9, 2023, granting the Motion to Seal "at this time." (Dkt. No. 10.) The Court later instructed the parties to fully brief the Motion to Seal and ordered the NRA to file a supporting memorandum in accordance with Local Civil Rule 5.03, D.S.C. The Court ordered that in the supporting memorandum the NRA should "explain, with respect to each filing, why less drastic alternatives to sealing will not afford adequate protection." (Dkt. No. 15.) The NRA has not filed any supporting memorandum, despite the Court's express order.

1.   **Legal Standard**

Pursuant to Local Civil Rule 5.03, D.S.C., "[a] party seeking to file documents under seal shall file and serve a 'Motion to Seal' accompanied by a memorandum." Local Civil Rule 5.03(A), D.S.C. The memorandum must:

> (1) identify, with specificity, the documents or portions thereof for which sealing is requested; (2) state the reasons why sealing is necessary; (3) explain (for each document or group of documents) why less drastic alternatives to sealing will not afford adequate protection; and (4) address the factors governing sealing of documents reflected in controlling case law.

*Id.*

The Fourth Circuit has explained that a district court "has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). However, the court favors public access and "[t]he public's right of access to judicial records and documents may be

abrogated only in unusual circumstances." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988).

"The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). "By contrast, the First Amendment secures a right of access only to particular judicial records and documents, and, when it applies, access may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." *Id.* at 266 (internal quotation marks and citations omitted).

The applicable right of access varies depending on the nature of a case and the items to be sealed. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004). "The Fourth Circuit has not clarified which right of access, or if any right of access, attaches to documents filed with non-dispositive pretrial motions, such as documents related to discovery motions." *Smithkline Beecham Corp. v. Abbott Lab'ys*, No. 1:15-cv-360, 2017 WL 11552659, at *3 (M.D.N.C. Mar. 7, 2017). Even so, the Fourth Circuit has suggested that "the First Amendment guarantee of access should not be extended to documents filed in connection with a motion [that] . . . do[es] not serve as a substitute for a trial." *In re Pol'y Mgmt. Sys. Corp.*, Nos. 94-2254, 2341, 67 F.3d 296, 1995 WL 541623, at *3 (4th Cir. Sept. 13, 1995). Accordingly, the Court does not consider the First Amendment right of access to attach to the materials filed in this action. *See, e.g.*, *Universal Underwriters Ins. Co. v. Lallier*, No. 7:17-cv-30-D, 2019 WL 1085180, at *1 (E.D.N.C. Mar. 6, 2019) ("Here, the exhibits relate to a motion for a protective order, and not a motion that seeks dispositive relief. Therefore, the right of access at issue arises under the common

law."); *Covington v. Semones*, No. 7:06-cv-00614, 2007 WL 1170644, at *2 (W.D. Va. Apr. 17, 2007) (motion to quash) ("In this instance, as the exhibits at issue were filed in connection with a non-dispositive motion [motion to quash], it is clear there is no First Amendment right of access.").

Assuming, then, that the common law right of access applies, the NRA must present "a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness." *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 293 (4th Cir. 2013) (quoting *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003)). In balancing these interests, a court may consider the following factors: "[1] whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; [2] whether release would enhance the public's understanding of an important historical event; and [3] whether the public has already had access to the information contained in the records." *In re Knight*, 743 F.2d at 235.

### 2. Analysis

While the NRA specifically asks to seal "[t]he subpoena at issue in this litigation, and the briefing in connection with Movant's Motion to Quash.," it appears to want the entire case to be sealed. (Dkt. No. 9 at 2.) According to the NRA, "[t]he facts and sensitive nature of the information in this case warrant nondisclosure." (*Id.* at 1.) In support, the NRA states that the Texas case "is, *inter alia*, an action for breach of contract arising out of ongoing litigation with the NRA despite the existence of a Confidential Settlement Agreement (CSA) containing a broad general release of any and all claims among the parties encompassed within the CSA, which bars such ongoing litigation." (*Id.* at 1–2.) According to the NRA,

> [i]n view of the confidential and sensitive nature of the CSA, and the fact that the Texas Court, as well as every court that has considered the confidentiality of the

>CSA, has recognized its confidentiality and the important public policy issues at stake,[3] such information should be sealed in this Court as well."

(*Id*. at 2.) In its Motion to Transfer, the NRA further states that its opposition to the Motion to Quash "contains information and exhibits that are under seal in the Texas Litigation; thus, the NRA moves to seal this Brief and the related papers filed with the Brief and requests that the Court seal these proceedings in their entirety, in recognition of the Texas Court's sealing order." (Dkt. No. 11-1 at 7 n.1.)

Notably, when Mrs. Loughlin filed her Motion to Quash, the Texas case was sealed in its entirety. It remained under seal when the NRA filed the instant Motion to Seal. However, on August 25, 2023, the District Judge issued an order in the Texas case, granting in part and denying in part a Motion to Vacate Sealing Order. *See* Case No. 3:22-cv-1944-G; Dkt. No. 171. Following that order, many of the filings were unsealed, including the initial complaint. Because many of the filings in the Texas case are no longer under seal, the NRA's main justification for sealing the instant proceedings no longer applies.

Further, while the NRA's Motion to Seal "certifies compliance with" Local Rule 5.03, Plaintiff has failed to follow "the mandatory procedure described" within the Rule. The NRA has not explained "for each document . . . why less drastic alternatives to sealing will not afford adequate protection." Local Civil Rule 5.3(A), D.S.C. The NRA has also failed to address the factors that courts should apply to decide whether a significant countervailing interest outweighs the public's interest in openness. *Id.*; *see In re Knight*, 743 F.2d at 235. Despite the Court allowing

---

[3] In its Motion, Plaintiff states that the New York Supreme Court granted the NRA's motion to seal the Confidential Settlement Agreement on July 14, 2023 in *People of the State of New York v. The National Rifle Association of America, et. al*., Index No. 451625/2020 (Sup. Ct. New York County). (Dkt. No. 9 at 2.) Plaintiff also states that the Virginia state court *sua sponte* issued an Order for Protective Order on July 18, 2023 in *National Rifle Association of America, et al. v. Dycio, et al.* (Circuit Court of Fairfax County, Virginia ), "ordering that 'the Confidential Settlement Agreement between the NRA and Ackerman McQueen shall be treated confidentially by the parties." (*Id.*) Plaintiff has not provided copies of these referenced rulings, however. Further, it appears that only the actual Confidential Settlement Agreements were sealed in these cases, not the entire proceedings.

11

the NRA another opportunity to comply with the Local Rule, the NRA has failed to file any supporting memorandum in compliance with the Rule.

Upon careful review, the Court finds the NRA has not met its burden of showing a significant interest that outweighs the presumption of access to the filings in this case. *See Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (discussing common law presumption of access; "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption."). Other than generally citing "the confidential and sensitive nature of the CSA," Plaintiff does not offer any "significant countervailing interest" in support of sealing. None of the filings in this action detail the actual contents of the CSA beyond what has already been unsealed in the Texas case. Without any compelling argument from the NRA on this issue, the Court cannot find that any filings in this case expressly disclose any confidential and sensitive information. Notably, the public has already had access to Mrs. Loughlin's Motion to Quash and underlying subpoena. These documents were available to the public for over a month before they were temporarily sealed upon the NRA's motion. For these reasons, the NRA's Motion to Seal (Dkt. No. 9) is denied.

## **CONCLUSION**

Based on the foregoing, the NRA's Motion to Seal (Dkt. No. 9) is DENIED. The Court VACATES its August 9, 2023 Text Order (Dkt. No. 10), which temporarily granted the Motion to Seal. The Clerk of Court is instructed to unseal this case. Additionally, the NRA's Motion to Transfer (Dkt. No. 11) is GRANTED, and the Motion to Quash (Dkt. No. 1) is hereby TRANSFERRED to the Northern District of Texas, Dallas Division, to be included in Case No. 3:22-cv-1944-G.

**IT IS SO ORDERED**.

August 30, 2023  
Charleston, South Carolina

_____  
MARY GORDON BAKER  
UNITED STATES MAGISTRATE JUDGE

13